UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| LISA L. CARTER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:12-cv-0075-RLY-TAB |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Lisa Carter appeals Commissioner Carolyn Colvin's decision denying her disability insurance benefits. Carter's severe impairments consist of fibromyalgia, interstitial cystitis, migraines with occipital neuralgia, and pinched nerves in the back and neck due to bone spurs. The Administrative Law Judge denied Carter's application for disability benefits after concluding that she is capable of performing past work as a cashier and cosmetologist. Carter contends that the ALJ committed several reversible errors when making the residual functional capacity determination at step four. These purported errors include: (1) rejecting treating physician Christopher LaFollette's RFC questionnaire, (2) giving Dr. Lee Fischer's unexplained RFC findings "great weight," (3) ignoring medical records documenting limitations imposed by migraines and interstitial cystitis, (4) mischaracterizing Carter's testimony about daily activities, and (5) improperly using boilerplate language. For the reasons below, the Magistrate Judge recommends that Carter's brief in support of her appeal [Docket No. 22] be granted, and the

Commissioner's decision be reversed and remanded for further consideration.

## II.     Discussion

### A.     Standard of Review

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: Whether the plaintiff (1) is currently unemployed, (2) has a severe impairment, (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations, (4) is unable to perform past relevant work, and (5) is unable to perform any other work in the national economy.  20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–13 (7th Cir. 2009).  "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.*

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).  "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  The ALJ, however, need not mention every piece of evidence in the record, so long as he builds a logical bridge from the evidence to his

2

conclusion.  *Denton*, 596 F.3d at 425.

    *A.*    *Dr. LaFollette*

Carter contends that the ALJ improperly rejected treating physician Dr. LaFollette's RFC questionnaire.  [A.R. at 693.]  "A treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record."  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  However, if the "treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it."  *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).  If the ALJ rejects the treating physician's opinion, he is "required to provide a sound explanation for his decision to reject it . . . ."  *Roddy*, 705 F.3d at 636–37.

The ALJ rejected Dr. LaFollette's RFC questionnaire in its entirety for two reasons: (1) Dr. LaFollette's "opinion is simply not supported by the medical evidence in the record," and (2) Dr. LaFollette's "progression notes indeed show the claimant's endorsed signs of improvement with her pain and symptoms, contradicting his opinion of extreme limitations."  [A.R. at 33.]  In the Magistrate Judge's view, the ALJ's explanation is insufficient to warrant rejecting Dr. LaFollette's questionnaire.

The ALJ fails to explain how Dr. LaFollette's questionnaire is not supported by medical evidence.  The ALJ merely makes a conclusory statement without any analysis.  [A.R. at 33.]  Perhaps the ALJ is relying on other parts of his decision to draw this conclusion, such as Drs. Fischer's and Rudolph's opinions as well as the ALJ's observation that Carter did not appear to

be in discomfort at the hearings and is able to assist with caring for her two nieces.[1]  But it is not the Court's role to speculate as to the ALJ's basis for rejecting Dr. LaFollette's questionnaire. *See Rinaldi-Mishka v. Astrue*, No. 12-C-1305, 2013 WL 3466844, at *12 (N.D. Ill. July 8, 2013) ("[T]he ALJ 'must at least minimally articulate' her analysis to allow meaningful review."); *Ellis v. Astrue*, No. 2:10-CV-452, 2012 WL 359305, at *10 (N.D. Ind. Feb. 2, 2012) ("The court will not speculate on the basis of the ALJ's opinion.").  The ALJ failed to set forth any reasons for concluding that the questionnaire is not supported by the record, and therefore the Magistrate Judge cannot accept it as an adequate basis for rejecting Dr. LaFollette's RFC questionnaire.

The ALJ's unexplained conclusion is particularly troubling given the extensive medical history that Carter cites in support of Dr. LaFollette's RFC questionnaire, which the ALJ failed to address. [Docket No. 22 at 21–23.]  As Carter explains, the opinions expressed on the RFC questionnaire are supported with previous clinical findings by Dr. LaFollette as well as other physicians.  In January 2009, Dr. LaFollette noted diffuse tenderness over the right trapezius along the paraspinal musculature and acute tenderness along her whole spinal column.  [A.R. at 513–15.]  In 2009, Dr. LaFollette documented "extreme" tenderness over the cervical spine, trapezius, lumbar spine, and spinous muscles.  [A.R. at 512.]  During a follow-up exam in July 2009, Dr. LaFollette noted that Carter "continues to have exquisite low back and sacral pain" and "jumps with minimal palpation of the skin or lumbosacral muscles."  [A.R. at 632.]  Carter also underwent an MRI of her lumbar spine on October 7, 2009, which showed mild to moderate lower lumbar facet arthropathy and a small right paracentral annular tear on the spine at L5-S1.

---

[1] As discussed below, the ALJ mischaracterized Carter's testimony that she is able to care for her two nieces.

[A.R. at 628–29.]  On October 12, 2009, Dr. LaFollette noted that Carter continues to have "significant low cervical and lumbar pain," documented hypersensitivity to touch over the lower cervical, upper thoracic, and lumbar spine.  [A.R. at 625–26.]  In December 2009, Dr. LaFollette prescribed Carter a rolling walker for "back pain" and "limited mobility."  [A.R. at 684.]  In March 2010, Dr. LaFollette noted "chronic" lower back pain as well as fibromyalgia.  [A.R. at 605.]

Dr. LaFollette's observations are also supported by other physicians.  In July 2007, Dr. Kern noted neck and back pain.  [A.R. at 466.]  Dr. Rowland, in March 2008, documented reduced motion and diminished reflexes in the lower extremities as well as "chronic" and "facet" pain.  [A.R. at 462–63.]  Carter's physical therapist similarly noted in early 2009 that she exhibited "severe" tenderness to palpation as well as reduced strength in both shoulders and "screamed at various times . . . even though using light touch."  [A.R. at 527–28.]  In February 2009, the consultative physical examiner observed that Carter is in moderate to severe pain.  [A.R. at 491.]  He observed that her extremities are tender and sometimes unable to be touched at all; he also noted reduced grip strength bilaterally.  [A.R. at 491–93.]

Not only did the ALJ fail to satisfy his obligation to articulate his reasons for concluding that Dr. LaFollette's questionnaire is unsupported by the record, but such a conclusion is not supported by substantial evidence given that the ALJ failed to address—let alone reject—the above evidence supporting the questionnaire.  *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (explaining that the ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding).  Accordingly, the ALJ's conclusion provides an inadequate basis

for rejecting Dr. LaFollette's questionnaire.

Turning to the ALJ's second basis for rejecting LaFollette's RFC questionnaire, the ALJ concluded that Dr. LaFollette's opinion of extreme limitations is inconsistent with his observation that her pain and symptoms are improving. This is also a faulty basis for rejecting the questionnaire. Dr. LaFollette never indicated the extent of improvement. Although Dr. LaFollette noted that Carter's pain improved significantly since her car accident, he does not indicate whether that improvement is so significant that it no longer causes extreme limitations. [A.R. at 655.] On the contrary, the same records that indicate improvement also note that Carter "continues to have a significant amount of pain in her neck, and back." [A.R. at 666.] Thus, Dr. LaFollette's observation of improvement is not necessarily inconsistent with his opinion that Carter continues to have significant pain and extreme limitations. In any event, a single observation of improvement ignores the fact that Dr. LaFollette has had the benefit of observing and treating Carter over a prolonged period of time and that Carter testified she has "good days" and "bad days." [A.R. at 53.] Even Dr. Fischer testified that fibromyalgia can cause "flares of pain from day to day." [A.R. at 45.]

In summary, the Magistrate Judge concludes that the ALJ should have fully considered the evidence supporting Dr. LaFollette's questionnaire before concluding that it was not supported by the record. Moreover, relying on a single observation of improvement that is not necessarily inconsistent with the medical record as a whole is an insufficient basis to reject Dr. LaFollette's questionnaire. On remand, the ALJ should address the above evidence and fully articulate his reasons, if any, for rejecting the questionnaire.

B.     Dr. Fischer

Carter also contends that the ALJ erred by adopting Dr. Fischer's unexplained RFC findings. Carter's argument is well taken. The ALJ gave Dr. Fischer's opinion "great weight" because he had an opportunity to review the entire record and is experienced in social security determinations. These factors, however, are only two factors among a series of other factors that an ALJ should consider in assigning weight to a physician's opinion. 20 C.F.R. § 404.1527(c). The regulations "state that more weight should be given to the opinions of doctors who have (1) examined a claimant, (2) treated a claimant frequently and for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, (5) offered opinions that are consistent with objective medical evidence and the record as a whole." *Roddy*, 705 F.3d at 636 (20 C.F.R. § 404.1527(c)(2)(I), (ii)). The ALJ failed to address most of these factors when assigning Dr. Fischer's opinion "great weight."

In fact, the record does not indicate that Dr. Fischer examined Carter or performed diagnostic tests, let alone treated her frequently. Although the ALJ noted that Dr. Fischer is a Diplomat of the American Board of Family Medicine, the ALJ failed to explain whether he specializes in fibromyalgia, interstitial cystitis, migraines, or any of Carter's other severe impairments.[2]  [A.R. at 31.] Moreover, the ALJ simply accepted Dr. Fischer's unexplained conclusion that Carter is capable of performing light exertional work. [A.R. at 31.] As Carter points out, there is no explanation as to how Dr. Fischer arrived at his conclusion. [A.R. at 44.]

Dr. Fischer never mentioned any data or records that he relied on to determine that Carter

---

[2]Perhaps the designation of Diplomat in the American Board of Family Medicine means that Dr. Fischer is a specialist in certain fields, but such an explanation is not set forth in the record.

could perform light exertional work. [A.R. at 42–47.] Dr. Fischer also never explained why his conclusion should be accepted over Dr. LaFollette's conflicting conclusion. [*Id.*] *See Ellis v. Astrue*, No. 2:10-CV-452, 2012 WL 359305, at *10 (N.D. Ind. Feb. 2, 2012) (finding error when "[t]he ALJ did not expressly recognize the conflict between Dr. Sheikh and the reviewing physician's opinion and did not engage in any discussion of how the objective medical evidence supported the reviewing physician's opinion and conflicted with Dr. Sheikh's."). Furthermore, Dr. Fischer's follow-up opinion—given after reviewing additional medical evidence (Exhibits 22F & 23F)—merely sets forth a conclusory statement that his opinion does not change. [A.R. at 692.] In light of the above shortcomings, the Magistrate Judge concludes that the ALJ's reasons for giving Dr. Fischer's opinion "great weight" are unfounded and warrant reversal. On remand, the ALJ should consider the reasons that Dr. Fischer concluded that Carter can perform light work and consider all of the above factors when assigning weight to Dr. Fischer's opinion. Considering that the ALJ also failed to address a litany of medical evidence supporting Dr. LaFollette's questionnaire, the ALJ should also reconsider whether Dr. Fischer's opinion is consistent with the medical record as a whole.

      C.     *Interstitial cystitis*

It is unclear what, if any, limitations the ALJ attributed to Carter's interstitial cystitis. The ALJ's RFC conclusion set forth in bold font at analysis point five does not include any limitation related to interstitial cystitis. [A.R. at 26.] Turning to the ALJ's substantive analysis for interstitial cystitis, the ALJ recognized that there is evidence of urology treatment; that she suffers from dysuria, dyspareunia, hematuria, and incomplete bladder emptying; that medical records reflect symptoms consisting of "frequency of urination every two hours, urgency of

urination, frequent urinary tract infections, disturbed sleep, and increased pain during sexual intercourse"; and that a CT scan showed a cluster of mesenteric mildly prominent lymph nodes in the right lower quadrant of the abdomen. [A.R. at 30.] The ALJ also recognized that her interstitial cystitis is managed with medication. [*Id.*] The ALJ then stated that the "effects of the claimant's interstitial cystitis have been accounted for in the above residual functional capacity." [A.R. at 30.] This cursory conclusion, however, fails to explain what limitation, if any, is imposed by interstitial cystitis and what accounts for the effects of interstitial cystitis.

Perhaps the ALJ believed that Carter's medications completely resolved any limitations imposed by interstitial cystitis, but such reasoning is not set forth in the ALJ's decision and it is not the Court's role to speculate. *See Rinaldi-Mishka v. Astrue*, No. 12-C-1305, 2013 WL 3466844, at *12 (N.D. Ill. July 8, 2013) ("[T]he ALJ 'must at least minimally articulate' her analysis to allow meaningful review."); *Ellis v. Astrue*, No. 2:10-CV-452, 2012 WL 359305, at *10 (N.D. Ind. Feb. 2, 2012) ("The court will not speculate on the basis of the ALJ's opinion."). Even if this was the ALJ's basis for imposing no limitation, such reasoning is not supported by substantial evidence.

The ALJ failed to address the extent that Carter's medications managed her symptoms. The ALJ cited Exhibits 19F and 20F to presumably show that she takes numerous medications, but these exhibits do not definitively state how effective the medications are and still list urgency of urination, urinary tract infection, and incomplete bladder emptying as "active problems." [A.R. at 644, 565.] Carter also testified that she continues to have urinary problems [A.R. at 57–59], and even Dr. Fischer testified that "it's hard to figure out exactly what frequency and how much of a real problem this [urinary issue] is." [A.R. at 47.] In light of the above

testimony and Carter's extensive history associated with interstitial cystitis, it was erroneous for the ALJ to conclude that interstitial cystitis imposes no limitation. Accordingly, the Magistrate Judge concludes that the ALJ's RFC assessment of interstitial cystitis is not supported by substantial evidence.

    *D.*    *Migraines*

With respect to Carter's migraines, the ALJ stated that she "failed to allege any specific functional limitations related to her migraine headaches with occipital neuralgia, and no additional limitations are established in the medical or other evidence of the record." [A.R. at 30.] This conclusion is not supported by substantial evidence. In December 2008, Carter completed a headache questionnaire and reported headaches every day with migraines once to twice weekly and that when they occurred she becomes nauseated, sometimes vomits, cannot "do anything at all," is "completely incapacitated," and has to lie down in a "completely dark room, with no noise." [A.R. at 182.] Additionally, Carter was admitted to the emergency room in September 2007 [A.R. at 331], April 2008 [A.R. at 304], and August 2008 [A.R. at 289, 469], because of migraines. The ALJ not only failed to consider this evidence, but it is contrary to his conclusion that no evidence exists in support of any limitations. Migraines that completely incapacitate an individual and require successive emergency room visits are certainly a limitation and should have been considered. The Magistrate Judge therefore concludes that this aspect of the ALJ's RFC finding is also not supported by substantial evidence.

    *E.*    *Carter's Testimony*

Carter also claims that the ALJ mischaracterized her testimony with respect to her daily activities. The ALJ discussed Carter's testimony, noting that she lives with her stepson and two

nieces. [A.R. at 29.] The ALJ noted that Carter "testified that she prepares simple meals for the girls and watches the girls when her husband is working. The claimant testified that she does not lift the girls, but she is able to change their diapers." [*Id.*] However, a review of the transcript reveals that Carter only testified that she is able to care for the children and change their diapers on "good days," which is only two or three days a week. [A.R. at 53.] On remand, the ALJ should account for this limitation.

### *F.     Boilerplate language*

Carter also contends that the ALJ improperly used boilerplate language. The ALJ opined:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[A.R. at 29.] Carter is correct that the Seventh Circuit has rejected this exact type of boilerplate language in some cases. *See Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). In those cases, the ALJ used the above boilerplate language to reject evidence "without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case." *Bjornson*, 671 F.3d at 644–45. The court explained that this problem is compounded when this boilerplate language appears before the credibility determination. *Id.* at 645 ("A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her

symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.").

While the ALJ failed to heed the warnings in *Bjornson* not to set forth boilerplate conclusions before making a credibility assessment, in the Magistrate Judge's view this alone does not warrant remand. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that remand is not required when it is predictable with great confidence that the agency will reach the same result on remand). Rather, the critical question is whether the ALJ built a logical bridge from the evidence in the record to the preceding conclusion. As discussed above, the ALJ erred in building that logical bridge in several respects. On remand, the ALJ should focus on the errors identified above in order to build that logical bridge. Since the Magistrate Judge is recommending remand, the ALJ shall not use conclusory boilerplate language prior to making a credibility determination as emphasized in *Bjornson.*

### III.   Conclusion

For the reasons above, the Magistrate Judge recommends that Carter's brief in support of her appeal [Docket No. 17] be granted, and the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

DATED:  08/13/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com